# EXHIBIT 1



90 of 1923 DOCUMENTS

Copyright 2009 West Group
VERDICTS, SETTLEMENTS & TACTICS

Ellsworth vs. Elwood, and Peoria Surgical Group, Ltd.

No. 06-L-115

Date: April 7, 2009

**TOPIC:** MEDICAL LIABILITY - Surgery

**TITLE:** $ 333,000 Verdict In Suit Arising From Breast Reduction Surgery

**RESULT:** $ 333,000 jury verdict.

**INJURY:** Complications post bilateral breast reduction; disfigurement.

**STATE:** Illinois

**PLAINTIFF ATTORNEY:** John M. Saletta, Motherway & Napleton, LLP, Chicago, IL

**DEFENDANT ATTORNEY:** Murvel Pretorius, Jr., and Adam P. Chaddock, Quinn, Johnston, Henderson, Pretorius & Cerulo, Peoria, IL

**SUMMARY:** On November 3, 2004, plaintiff, age 30, not employed, underwent a bilateral breast reduction surgery, performed by Eric T. Elwood, M.D., a highly trained and specialized plastic surgeon. One day after release from the hospital from the surgery, the patient experienced a blue tinge to her right nipple. Hyperbaric treatment was ordered. There was conflicting evidence as to whether the hyperbaric treatment was successful and whether the symptoms resolved. Roughly three weeks later, the patient was readmitted to the emergency room with necrotic tissue and open wounds on the right breast. The left breast subsequently followed a similar course. Plaintiff underwent various debridement surgeries and a subsequent reconstruction of her breasts.

Plaintiffs alleged that Defendant over tightly stitched the sutures, thereby causing blood loss to the breasts. Plaintiffs further allege that Dr. Elwood did not timely return the patient to surgery once the breasts demonstrated evidence of synodic tissue.

**NOTE:** For other recent cases involving breast reduction surgery, see Hawkins v. Guinn, No. 04CV221063 (Jackson Cty. Cit. Ct. Mo. Sept. 20, 2006), 27 No. 2 Verdicts, Settlements & Tactics art. 32 (February 2007) ($ 253,000 verdict in suit alleging negligent breast reduction surgery); Salim vs. Halls, No. GIC854541 (San Diego Cty. Superior Court, Cal. October 23, 2006) 26 No. 12 Verdicts, Settlements & Tactics art. 29 (December 2006) (defense verdict in suit arising from breast reduction procedure); Vincent v. Sasmor, (Essex County Superior Court, Lawrence, MA June 2006) 26 No. 7 Verdicts, Settlements & Tactics art. 25 (July 2006) ($ 3.5 million verdict in suit arising from breast reduction surgery); Shorter v. Wray, No. CL03-133 (Roanoke City Cir. Ct. Va. Aug. 19, 2005), 25 Verdicts, Settlements &

Tactics 417 (Oct. 2005) ($ 1.5 million verdict); Smith v. Vu, No. 02CC10689 (Orange Cty. Super. Ct. Cal. May 2, 2004), 24 Verdicts, Settlements & Tactics 579 (Dec. 2004) ($ 250,000 settlement); Conway v. Blackburn, No. 02-2-02741 (Whatcom Cty. Super. Ct. Bellingham, Wash. Feb. 3, 2004), 24 Verdicts, Settlements & Tactics 323 (July 2004); Jordan v. Kraus, No. 97 L 15297 (Cook Cty. Cir. Ct. Ill. Sept. 14, 2002), 23 Verdicts, Settlements & Tactics 111 ($ 300,000 verdict in suit alleging negligent breast reduction surgery).

**PLAINTIFF EXPERT WITNESSES:** Dr. Frank Madda, Plastic Surgeon, Chicago

**DEFENDANT EXPERT WITNESSES:** Dr. Helen Kraus, Plastic Surgeon, Chicago

**COURT:** Ellsworth vs. Elwood, and Peoria Surgical Group, Ltd., No. 06-L-115 (Peoria County, Illinois, April 7, 2009)

**PUBLICATION-DATE:** June 2009



91 of 1923 DOCUMENTS

Copyright 2009 West Group
VERDICTS, SETTLEMENTS & TACTICS

Swanson v. Pummill

No. 07-87620 NH

Date: April 3, 2009

**TOPIC:** MEDICAL LIABILITY - Surgery

**TITLE:** $ 364,000 Verdict In Suit Arising From Surgery to Remove Breast Implants

**RESULT:** $ 364,000 jury verdict in favor of plaintiff.

The verdict consisted of $ 34,000 economic damages, $ 200,000 past non-economic damages and $ 130,000 future non-economic damages.

**INJURY:** Permanent breast disfigurement, pain, suffering, and mental anguish affecting her activities of daily living. She has also been required to undergo numerous additional surgical procedures, which have resulted in the accumulation of medical bills and out of pocket expenses.

**STATE:** Michigan

**PLAINTIFF ATTORNEY:** Charles R. Ash, III and Nicole A. Wilczynski of Sommers Schwartz, P.C., Southfield, Michigan

**DEFENDANT ATTORNEY:** Renee S. Siegan and Elizabeth A. Pyden of Saurbier & Siegan, P.C., St. Clair Shores, MI

**SUMMARY:** This is a medical negligence case related to the care and treatment of Plaintiff, Karen Swanson, by the Defendant, Dr. Kimberly Pummill, a plastic surgeon. In September 2005, Karen had her first consultation visit with Dr. Pummill. During this visit, Karen expressed concern about pain and hardening of her breast implants which she had placed approximately fifteen years earlier. Dr. Pummill indicated that Karen would be a good candidate for a bilateral breast lift and removal of breast implants. Dr. Pummill performed these surgical procedures on February 14, 2006. The plaintiff alleged that Dr. Pummill failed to utilize the appropriate surgical technique and that she failed to provide Karen with adequate post-operative care and treatment.

**PLAINTIFF EXPERT WITNESSES:** Dr. Michael Milan, board certified plastic surgeon, Michigan

**COURT:** Swanson v. Pummill, No. 07-87620 NH (Genesee County Circuit Court of Michigan April 3, 2009)

**PUBLICATION-DATE:** October 2009



FOCUS - 15 of 281 DOCUMENTS

Call, Sharlene v. Keiter, John E MD

**Case No.** 030903501

*2009 Jury Verdicts LEXIS 237703; 1 Exp. Wit. 68915*

**TOPIC:** Medical Malpractice

**CASE RESULTS:** Trial

**CASE ISSUES:** Following breast implant procedure, patient developed infection requiring removal & replacement resulting in deformity

**DATE:**  May 2008, Trial Date

**INJURY:** Physical Injury

**STATE:** Utah

**COURT:** Weber County 2nd District

**VIEW OTHER AVAILABLE CONTENT RELATED TO THIS EXPERT:** Miner, Robert Thomas

**SUMMARY:** Verdict awarded to Plaintiff

**TOTAL AWARD:** $ 108,522

**PLAINTIFF ATTORNEY(S):**
Peterson, Don R
FIRM NAME - Howard Lewis Peterson

**DEFENDANT ATTORNEY(S):**
Nelson, Christian W
FIRM NAME - Richards, Brandt, Miller & Nelson
ADDRESS - 299 S Main St, 15th Fl Salt Lake City, UT 84111
PHONE - (801)531-2000
FAX - (801)532-5506

**PLAINTIFF EXPERT(S):**
Miner, Robert Thomas, M.D.
ADDRESS - Santa Ana, CA
SPECIALTY - Plastic & Reconstructive Surgery, Medical Legal Law

**DEFENDANT EXPERT(S):**
Thomas,, MD



218 of 1923 DOCUMENTS

Copyright 2007 Jury Verdict Review Publications, Inc.
New York Jury Verdict Review & Analysis

DICICCO vs. CATTANI

Index No. 11366/03

*2007 NY Jury Verdicts Review LEXIS 746*

**Verdict Date:** April, 2007;

**Publication Date:** July, 2007

**Topic:**  MEDICAL MALPRACTICE - NEGLIGENT PERFORMANCE OF BREAST AUGMENTATION SURGERY - SCARRING - MULTIPLE ADDITIONAL SURGERIES

**Result:** $ 737,000 Verdict

**State:** New York

**County:** Richmond

**Judge:** Anthony I. Giacobbe

**Plaintiff Attorney:** Jeffrey M. Rich of Rich & Rich in New York, NY

**Facts:** This was a medical malpractice action in which the 30-year-old plaintiff contended that the defendant plastic surgeon performed cosmetic breast augmentation surgery in a negligent manner. The plaintiff contended that as a result, she developed capsular contracture, where the tissue that surrounds the implant hardens. The plaintiff maintained that among the injuries suffered, was the protrusion of the left implant through the skin. The plaintiff maintained that she has been left with disfiguring scarring, despite several additional procedures on each breast. The plaintiff contended that although the prognosis for substantial improvement from additional surgery is good, there is no guarantee that she will experience such improvement and that even if she does, she will nonetheless suffer significant scarring permanently. The plaintiff related that as time passed after the initial surgery, it became evident that she experienced extensive scarring and hardness in both breasts. The defendant replaced the implants several months later and the plaintiff contended that the condition deteriorated.

The plaintiff's expert plastic surgeon contended that the defendant deviated during both surgeries in creating the incision within the areola, rather than properly creating it at the junction between the areola and surrounding skin. The expert maintained that the alleged departures resulted in significantly increased scarring that otherwise probably would not have occurred. The expert further maintained that the defendant departed during both the initial surgery and the replacement of the implants several late, in failing to separate a portion of the pectoralis major muscle from the bone in order to create a pocket that accommodated the implant. The plaintiff's expert maintained that the failure of the

© 2007 Jury Verdict Review Publications, Inc.,New York Jury Verdict Review & Analysis

defendant to do so caused normal movement by the plaintiff to place extensive force on the implants, resulting in the left implant protruding through the skin 1-2 months after the second procedure. The defendant performed additional surgery.

The plaintiff contended that the scarring increased and that the protrusion of the left implant recurred. The plaintiff's expert was of the opinion that proper surgery will probably afford improvement and the plaintiff is contemplating additional surgery.

The defendant denied that the surgeries were performed in a negligent manner. The defendant contended that the decision as to where to create the incision and whether to separate a portion of the pectoralis major muscle from the bone is judgmental in nature. The defendant also contended that the cause of the poor healing was the refusal of the plaintiff to quit cigarette smoking as recommended, contending that such smoking compromised the ability to heal.

The plaintiff did not dispute that the continuation of smoking will be likely to cause some compromise to the recovery process, but contended that this factor did not account for the injuries suffered by the plaintiff. The plaintiff contended that cigarette smokers commonly undergo such surgery without suffering such injuries. The plaintiff also pointed out that the defendant did not insist that the plaintiff quit smoking before agreeing to perform the surgery.

The plaintiff made no income claims.

The jury found for the plaintiff and awarded $ 737,000, including $ 400,000 for past pain and suffering, $ 300,000 for future pain and suffering and $ 37,000 for medical costs.

**Commentary:** The plaintiff, who underwent elective cosmetic breast augmentation surgery, emphasized that the standard of care should not have been lowered simply because the surgery was elective in nature, and that once she made the choice to undergo the procedure, she had the same rights to a properly performed procedure as any patient. The plaintiff had claimed that the defendant departed in the initial choice of the area in which to create the incision, contending that the standard of care required that the incision be created at the border of the areola and surrounding skin, as opposed to within the areola, as done by the defendant. The Defendant also claimed that the failure to create a space between the pectoralis major muscle and the bone to accommodate the implants and minimize the chances that movement, such as bending, would result in excessive force being placed on an implant, causing it to protrude.

In this case, involving a plaintiff who underwent elective cosmetic surgery, it would, as a practical matter, be more difficult for the plaintiff to evoke a strong reaction from the jury. It is thought that the jury's acceptance of the plaintiff's arguments, that the malpractice was very clear and that the injuries could have been readily avoided, was especially important in this type of case. Additionally, the defendant had argued that the plaintiff's failure to quit smoking as recommended was the cause of the poor healing. The plaintiff did not dispute that the continuation of smoking and should have expected to experience some degree of a negative effect on the healing process. Another factor is that the defendant had not insisted that the plaintiff quit before agreeing to perform the surgery and that smokers routinely have such surgery without complications. Arguing that in view of such factors, the defendant's position should be rejected.

**Issue:** Published in Volume 24, Issue 7



224 of 1923 DOCUMENTS

Copyright 2007 North Texas Reports

JENNIFER DAVIS vs. VASDEV S. RAI, M. D.

Case No. 05-8226-G

June 2007

**TOPIC:** MALPRACTICE - Complications following TUBA breast augmentation surgery - Negligence

**RESULT:** Plaintiff Verdict

(Finding of negligence against Defendant. Damages to Plaintiff: Pain and mental anguish - Past $ 75,000.00 and future $ 25,000.00; Disfigurement -Past $ 25,000.00 and future $ 0.00; Impairment - Past and future $ 0.00; Medical care - Past $ 25,000.00 and future $ 15,000.00.)

**INJURY:** Breast deformity

**SPECIALS:** Past Medical: $ 25,000.00; Future Medical: Unspecified; Past Lost Earnings: Not claimed; Future Lost Earnings: Not claimed

**STATE:** Texas

**COUNTY:** Dallas

**COURT:** 134th

**JUDGE:** A. Ashby

**PLAINTIFF PROFILE:**
  Age: 19
  Marital Status: Single

**PLAINTIFF ATTORNEY:** Glynis Zavarelli (469-665-9100) Wentz & Zavarelli

**DEFENDANT ATTORNEY:** Rai - Jeffery M. Kershaw (214-905-2003) Chamblee & Ryan

**POLL:** 10-2

**FACTS:** In June, 2003, Plaintiff underwent transumbilical endoscopic bilateral breast augmentation performed by Defendant. Due to asymmetry and other issues, a revision procedure was done to the right breast in August, 2003. Unhappy with the results, Plaintiff came under the care of another plastic surgeon for a revision procedure. During that procedure, a complication lead to an infection and subsequent removal of the implants. Plaintiff brought action

© 2007 North Texas Reports

contending Defendant had not been qualified to perform the TUBA procedure and that Dr. Rai had ignored her postoperative complaints. Defendant contended he had been qualified and had properly performed the procedure. Defendant took the position that unforeseen scarring had caused malpositioning of the implants and the subsequent medical treatment had resulted in the deformity to Ms. Davis' left breast.

**PLAINTIFF EXPERTS:**
Dr. John Baeke, Overland Park KS, Plastic Surgeon (Live)

**DEFENDANT EXPERTS:**
Dr. L. Fabian Worthing, Houston, Plastic Surgeon (Live)

**OFFER:** Did not consent to offer

**DEMAND:** $ 450,000.00

**TRIAL-TIME:** 6 days

**DELIBERATION:** 4.5 hours

**JURY COMPOSITION:** 6 Male - 6 Female

Published in 06/07 page V-53

* * * * * * * * * * * * **COURT CHARGES** * * * * * * * * * * * *

QUESTION NO. 1

Did the negligence, if any, of Vasdev S. Rai, M.D. proximately cause the injury in question?

Answer "Yes" or "No".

Yes

Answer Question No. 2 if you answered "Yes" to Question No. 1. Otherwise, do not answer Question No. 2.

QUESTION NO. 2.

What sum of money, if paid now in cash, would fairly and reasonably compensate Jennifer Davis for her injuries, if any, that resulted from the occurrence in question?

Consider the elements of damages listed below and none other. Consider each element separately. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss, if any. Do not include interest or any amount of damages you may find.

Answer separately, in dollars and cents, for damages, if any.

a. Physical pain and mental anguish sustained in the past.

Answer: $ 75,000.00

b. Physical pain and mental anguish that, in reasonable probability, Jennifer Davis will sustain in the future.

Answer: $ 25,000.00

© 2007 North Texas Reports

c. Disfigurement sustained in the past.

Answer: $ 25,000.00

d. Disfigurement that, in reasonable probability, Jennifer Davis will sustain in the future.

Answer: 0

e. Physical impairment sustained in the past.

Answer: 0

f. Physical impairment that, in reasonable probability, Jennifer Davis will sustain in the future.

Answer: 0

g. Medical care expenses in the past.

Answer: $ 25,000.00

h. Medical care expenses that, in reasonable probability, Jennifer Davis will incur in the future.

Answer: $ 15,000.00

Answer the following question regarding Vasdev S. Rai, M.D. only if you unanimously answered "Yes" to Question No. 1. Otherwise, do not answer the following question. You are instructed that, in order to answer "Yes" to the following question, your answer must be unanimous. You may answer "No" to the following question only upon a vote often or more jurors. Otherwise, you must not answer the following question.

QUESTION NO. 3

Do you find by clear and convincing evidence that the harm to Jennifer Davis resulted from gross negligence?

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction as to the truth of the allegations sought to be established.

"Gross negligence" means an act or omission by Vasdev S. Rai, M.D.:

(a) which when viewed objectively from the standpoint Vasdev S. Rai, M.D. at the time of its occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

(b) of which Vasdev S. Rai, M.D. has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

Answer "Yes" or "No."

Answer: No Answer Provided



436 of 1923 DOCUMENTS

Karachum, Mary Lou v. Wasserstrum, Alan MD

**Case No.** BER-L-3731-02

*2004 Jury Verdicts LEXIS 40368; 1 Exp. Wit. 73784; 1 Exp. Wit. 168020; 1 Exp. Wit.
208064; 1 Exp. Wit. 228952*

**TOPIC:** Medical Malpractice

**CASE RESULTS:** Trial

**CASE ISSUES:** During breast reduction surgery, removal of excessive tissue & misalignment of nipples resulted in
permanent disfigurement

**DATE:** December 2004, Trial Date

**INJURY:** Physical Injury

**STATE:** New Jersey

**COURT:** Bergen County Superior

**VIEW OTHER AVAILABLE CONTENT RELATED TO THIS EXPERT:** Jacobs, Elliot William
Riccioli, Diana L
Garbaccio, Charles G
Sostowski, Richard M

**SUMMARY:** Verdict awarded to Plaintiff

**TOTAL AWARD:** $ 1,500,000

**PLAINTIFF ATTORNEY(S):**
Dimaria, Frederic
FIRM NAME - Dimaria & Dimaria
ADDRESS - 111 Grove St Lodi, NJ 07644
PHONE - (973)777-6422

**DEFENDANT ATTORNEY(S):**
Mattia, Philip F
FIRM NAME - Philip F Mattia & Associates
ADDRESS - 401 Hamburg Turnpike, Ste 205 Wayne, NJ 07470
PHONE - (973)942-8200
FAX - (973)595-9262

**PLAINTIFF EXPERT(S):**
Jacobs, Elliot William, M.D.
ADDRESS - New York, NY
SPECIALTY - Plastic & Reconstructive Surgery, Hand Surgery
December 2004, Testimony Date

Riccioli, Diana L
ADDRESS - Clifton, NJ
SPECIALTY - Counseling, Psychology
December 2004, Testimony Date

**DEFENDANT EXPERT(S):**
Garbaccio, Charles G, M.D.
ADDRESS - Tenafly, NJ
SPECIALTY - Plastic & Reconstructive Surgery
December 2004, Testimony Date

Sostowski, Richard M, M.D.
ADDRESS - Bernardsville, NJ
SPECIALTY - Forensic Psychiatry, Psychiatry
December 2004, Testimony Date



FOCUS - 85 of 281 DOCUMENTS

Copyright 2003 Florida Legal Periodicals, Inc.
FLORIDA JURY VERDICT REPORTER (FJVR)

YAFFA RAVIV vs. J. HOWELL TILLER, M.D.

Docket No.: 00-11955 CA 30; FJVR Reference No. 03:5-45

Verdict Date: March 6, 2003; Publication Date: May 2003

**TOPIC:** Medical Malpractice - Breast Augmentation Procedure

**RESULT:** $ 155,000 for Plaintiff. (verdict)

($ 10,000 - past medical expenses; $ 145,000 - past pain and suffering).

**STATE:** Florida

**COUNTY:** Miami-Dade

**JUDGE:** Barbara Levenson

**PLAINTIFF PROFILE:** Age: 34
　　　　　　Sex: Female
　　　　　　Occupation: Jewelry Designer/Real Estate Agent

**PLAINTIFF ATTORNEY:** Brett A. Panter of Panter, Panter & Sampedro, P.A., Miami

**DEFENDANT ATTORNEY:** Peter K. Spillis of George, Hartz, et al., Ft. Lauderdale

CAUSE OF INJURY: Plaintiff alleged that on May 12, 1998, Defendant, a plastic surgeon, performed the wrong type of surgery on her in Miami Beach. Plaintiff claimed that the procedure of augmentation, commonly known as enlargement, was the incorrect procedure for Plaintiff. Plaintiff contended that she needed augmentation and mastopexy/lift at the same time and Defendant was negligent to try augmentation alone. Plaintiff also contended that the augmentation was performed incorrectly in that Defendant placed the implants substantially and negligently too high and used implants which were too large, in addition, when doing the mastopexy/lift, on September 1, Plaintiff did not remove the implants which were still too large and too high. Further, because the implants were too large, the tensile force was too great while the mastopexy was being performed, causing scarring beyond the realm of expected and normal scarring that is anticipated from this procedure. Defendant vigorously contested the issue of liability, claiming that the result Plaintiff ended up with, although not very favorable, was within the realm of the standard of care and did not reflect negligence. Defendant further claimed that the scarring was not the result of negligence, but was keloid or hypertrophic scarring primarily due to Plaintiff's skin type, which is a known risk of surgery.

NATURE OF INJURY: Pain; disfigurement; humiliation for approximately four years until March 2002 when she

underwent a third surgical procedure performed by Dr. Roudner to remove the implants and revise the scars; Plaintiff ended up with an adequate result following the third surgery.

**PLAINTIFF EXPERT WITNESSES:** Burt Greenberg, M.D., Plastic Surgery, New York, NY (video depo)

**DEFENDANT EXPERT WITNESSES:** George Perez, M.D., Plastic Surgery, Ft. Lauderdale

PLAINTIFF'S ATTORNEY'S COMMENTS: The jury found that there was negligence on the part of Defendant which was a legal cause of loss, injury, or damage to Plaintiff. Defendant filed a Proposal for Settlement in the amount of $ 15,000.

6 of 32 DOCUMENTS

Copyright 2002 Verdict Reporter, Inc.
St. Louis Verdict Reporter

BILLIE KELLEY V. BRENT V. STROMBERG, M.D.

Case No. 00CC–001066

April 17, 2002

**TOPIC:** Malpractice

**RESULT:** Verdict: Returned April 17, 2002 for plaintiff $300,000 ($200,000 past non–economic damages, $50,000 future non–economic damages, $50,000 future medical damages); defendant's motion for new trial was denied with the exception of the extent of the jury's award for future medical damages, which was reduced to $10,000 for a total verdict of $260,000.

**DAMAGES:** Disfigurement of breast, emotional distress; medical specials: none submitted; wage loss: none submitted.

**INJURY:** Disfigurement of breast, emotional distress; medical specials: none submitted; wage loss: none submitted.

**STATE:** Missouri

**COURT:** St. Louis County – Division 5

**JUDGE:** Hon. John F. Kintz

**PLAINTIFF ATTORNEY(S):** Genevieve Nichols
      314
      Mary Coffey, Coffey & Associates, 6202 Columbia, St. Louis, MO 63139–2715
      phone #

**DEFENDANT ATTORNEY(S):** Jonathan Ries
      314
      Sandberg, Phoenix & vonGontard, 515 North Sixth Street, One City Centre, 15th Floor, St. Louis, MO 63101–1804
      phone #

**SUMMARY:** The following information is from plaintiff's attorneys; defendant's attorney was unavailable for comment.

Medical malpractice, negligent surgery, breast reconstruction; Plaintiff, about 70 years old at the time, alleged that on March 31, 1998 she underwent the third of a series of breast reconstruction surgeries performed by defendant Stromberg. Plaintiff had a prior history of breast cancer and had both breasts removed; one in 1992 and the other one in 1996. Plaintiff claimed that during the final reconstructive surgery, defendant negligently placed her left nipple on the side of her breast. Plaintiff contended the improper placement of the nipple was apparent after removing the surgical dressings the first time and she complained about it immediately.

Defendant denied negligence and contended that the nipple had been properly placed during the surgery, but had subsequently migrated to an anatomically incorrect position after the surgery due to healing complications and scar tissue contractures. Defendant's insurer was The Doctor's Company.

  

© 2002 Verdict Reporter, Inc., St. Louis Verdict Reporter

**PLAINTIFF EXPERTS:**
Dr. Hubert Weinberg, Plastic Surgeon, expert from New York, NY, live.

**DEFENDANT EXPERTS:**
Dr. David Kaplin, Plastic Surgeon, expert from St. Louis, MO, by video deposition.

**DEMAND:** $45,000 before trial

**ISSUE:** Volume XV, No. 23

 

1 of 1 DOCUMENT

COPYRIGHT 2002 NLP IP Company -- American Lawyer Media. All rights reserved
VerdictSearch California Reporter

Jacoba Allbritton v. Abraham Zachariah, M.D.; No. 768844

**Verdict Date:** 07/28/2000

**Topic:** Medical Malpractice; Breast Implant

**Result:** Settlement talks:

Arbitration award of defense by David Henningsen; Trial de Novo by plaintiff.

Demand $ 39,999. Offer Waiver of Costs.

Result: $ 186,200.10-2

Note: Plaintiff reports that on October 9, 2000, the Court awarded the plaintiff $ 28,553 in interest and $ 11,319 in expert fees and costs raising the verdict to $ 226,072.

Defendant's motion for a new trial was denied.

**Disbursement:** Award Total: $ 186,200

**Injury:** Injuries: Two unnecessary surgeries and loss of implant requiring a fourth prospective surgery for re-implantation.

Treatment: Removal of left implant.

Residuals: Disfigurement due to right breast implant remaining in and the left breast implant being removed.

Specials:

Medical to date $ 1,200. Future medical $ 10,000.

**State:** California

**Court:** Superior Court of Santa Clara County, San Jose

**Judge:** Andrea Y. Bryan

**Plaintiff Attorney:** Robert Burns Bostwick, Jr.; Bostwick Janoff; San Jose, CA (Jacoba Allbritton)
Jeffrey D. Janoff; Bostwick Janoff; San Jose, CA (Jacoba Allbritton)

**Defendant Attorney:** Barry C. Marsh; Hinshaw, Winkler, Draa, Marsh Still; Saratoga, CA (Abraham Zachariah, M.D.)

**Facts:** July 10, 1996, plaintiff, a 23-year-old unemployed woman, underwent a bilateral augmentation mammoplasty (breast augmentation) performed by defendant Dr. Zachariah, a plastic surgeon. On January 29, 1997, the plaintiff underwent a repair of the left breast implant pocket and an evacuation of seroma (collection

COPYRIGHT 2002 NLP IP Company -- American Lawyer Media. All rights reser

of serum in the tissue) by Dr. Zachariah. The reason for the repair of the left breast was in dispute. In March 1997, the plaintiff developed capsuler contracture (a capsule formed around the implant). On November 25, 1997, she underwent a third surgery for repair of the pocket and removal of the left breast implant by a Dr. Tomlinson.

Plaintiff contended Dr. Zachariah created the left breast implant pocket too far over the sternum causing a defect that had to be repaired. The breast repair was needed because it had become deformed due to sutures that were put into inflamed tissue and did not hold. Dr. Zachariah inadequately repaired the defect and replaced the implant in spite of obvious inflammation. Dr. Rosenberg testified that it was below the standard of care to make the pocket too far medially (closer to the middle of her chest) and to not remove the implant during the second procedure. This caused the third operation and may result in a fourth surgery for a new implant.

Defendant contended the plaintiff was involved in two altercations causing a herniation of the implant pocket. Dr. Anthony testified that Dr. Zachariah made a mistake in creating the pocket, but it was not below the standard of care. The repair was proper and the third surgery was caused by capsuler contracture and not negligence.

Plaintiff attorney asked the jury to award $ 225,000.

**Plaintiff Experts:** Howard L. Rosenberg, M.D.; Plastic Reconstructive Surgery; Mountain View, CA, Jeffrey Janoff, Robert Bostwick, Jr.

**Defendant Experts:** James Anthony, M.D.; Plastic Reconstructive Surgery; San Francisco, CA, Barry Marsh

**Insurance:** Norcal

**Issue:** VOLUME 44-43

  



FOCUS - 25 of 57 DOCUMENTS

Copyright 1995 North Texas Reports

MONIEREE GRIMES vs. BAXTER HEALTHCARE CORP.  AS SUCCESSOR IN INT.
TO HEYER-SCHULTE CORP. AND AMERICAN HEYER-SCHULTE CORP. AND
AMERICAN HOSPITAL SUPPLY CORP.

Case No. 93-8828-E

June 1995

**TOPIC:** PRODUCTS LIABILITY - Patient suffers injuries due to rupture of breast implant - Neg., gr. neg., strict
liability & DTPA

**RESULT:** Plaintiff Verdict

(Finding of manufacturing defect and negligence against Defendants.  No finding of design defect, marketing def. gross
negligence or violation of DTPA against Defendants.  Damages to Plain.: pain & mental anguish, disfigurement,
impairment and medical expense - past & future $400,000.)

**INJURY:** Chronic fatigue, joint pain, swelling & mild peripheral neuropathy

**SPECIALS:** Past Medical:$25,000.00; Future Medical: Undetermined; Past Lost Earnings: Not Claimed; Future Lost
Earnings: Not Claimed

**STATE:** Texas

**COUNTY:** Dallas

**COURT:** 101st

**JUDGE:** J. Patterson

**PLAINTIFF PROFILE:**
  Age - Date of Injury: 70
  Marital Status: Married

**PLAINTIFF ATTORNEY:** Scott A. Ozmun (512-476-4346); Jerry Galow (512-476-4346); Sally Starnes
(512-476-4346)

**DEFENDANT ATTORNEY:** Russell W. Schell (214-450-2000); Katherine Grogman (310-451-2273); Charles
McCaghey (203-357-9200)

**POLL:** 10-2

© 1995 North Texas Reports

**FACTS:** In 1981, subsequent to surgery for bilateral breast cancer, Plaintiff received silicone gel implants manufactured by Defendants.  In 1993, after rupture of the right implant, Plaintiff underwent bilateral removal. Contending that her subsequent condition was consistent with atypical connective tissue disease, Plaintiff brought action for negligence, gross negligence, violation of DTPA and design, manufacturing and marketing defect. Defendants denied causation, taking the position that Ms. Grimes' condition was due to her age and having been diagnosed with colon cancer in 1994.

**PLAINTIFF EXPERTS:**
Michael Resch, Mechanical Engineer, Lincoln NE (Live)
Harris Busch, Ph.D., Toxicologist, Houston (Live)
Mark Latte, Forensic Pathologist, Gualala CA (Live)
Dr. Mitchell Forman, D.O. - Rheumatology, Fort Worth (Live)

**DEFENDANT EXPERTS:**
Dr. Erik Austad, Plastic Surgeon, Ann Arbor MI (Live)
Dr. John Cohen, Immunologist, Denver CO (Live)
Michael Evans, Ph.D., Toxicologist, Indianapolis IN (Live)
Shelby Thames, Polymer Chemist, Hattiesburg MS (Live)
Dr. Daniel Clauw, Rheumatology, Washington DC (Live)

**OFFER:** $140,000.00

**DEMAND:** $250,000.00

Published in 06/95 page V-129

**\* \* \* \* \* \* \* \* \* \* \* \* COURT CHARGES \* \* \* \* \* \* \* \* \* \* \* \***


General Definitions: Preponderance of the Evidence, Direct/Circumstantial Evidence

Instructions: (1) Product Defect; (2) Unreasonably Dangerous Product; (3) Producing Cause; (4) Design Defect; (5) Marketing Defect; (6) Adequate Warnings and Instructions; (7) Negligence; (8) Ordinary Care; (9) Proximate Cause; (10) Gross Negligence; (11) False, Misleading, or Deceptive Act or Practice; (12) Failure to Comply with a Warranty; (13) Express Warranty; (14) Knowingly; (15) Exemplary Damages;

Question No. 1-A

Was there a manufacturing defect in the silicone breast implants that Plaintiff received at the time they left the possession of American Heyer-Schulte Corporation that was a producing cause of the illness or injuries in question?

A "DEFECT" means a condition of the product that renders it unreasonably dangerous.  An "UNREASONABLY DANGEROUS" product is one that is dangerous to an extent beyond that which would be contemplated by the ordinary user of the product, with the ordinary knowledge common to the community as to the product's characteristics.

"PRODUCING CAUSE" means an efficient, exciting or contributing cause that, in a natural sequence, produced the injury or illness of Plaintiff.  There may be more than one producing cause.

Answer "Yes" or "No".

Answer: Yes

© 1995 North Texas Reports

Question No. 1-B

Was there a design defect in the silicone breast implants that Plaintiff received at the time they left the possession of American Heyer-Schulte Corporation that was a producing cause of the illness or injuries in question.

A "DESIGN DEFECT" is a condition of the product that renders it unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use.

An "UNREASONABLY DANGEROUS" product is one that is dangerous to an extent beyond that which would be contemplated by the ordinary user of the product, with the ordinary knowledge common to the community as to the product's characteristics.

"PRODUCING CAUSE" means an efficient, exciting or contributing cause that, in a natural sequence, produced the injury or illness of Plaintiff.  There may be more than one producing cause.

Answer "Yes" or "No".

Answer: No

Question No. 1-C

Was there a defect in the marketing of the silicone breast implants that Plaintiff received at the time they left the possession of American Heyer-Schulte Corporation that was a producing cause of the illness or injuries in question?

A "MARKETING DEFECT" with respect to the product means the failure to give adequate warnings of the product's dangers that were known or by the application of reasonably developed human skill and foresight should have been known or failure to give adequate instructions to avoid such dangers, which failure rendered the product unreasonably dangerous as marketed.

"ADEQUATE WARNINGS AND INSTRUCTIONS" mean warnings and instructions given in a form that could reasonably be expected to catch the attention of a reasonably prudent person in the circumstances of the product's use; and the content of the warnings and instructions must be comprehensible to the average user and must convey a fair indication of the nature and extent of the danger and how to avoid it to the mind of a reasonably prudent person.

An "UNREASONABLY DANGEROUS" product is one that is dangerous to an extent beyond that which would be contemplated by the ordinary user of the product, with the ordinary knowledge common to the community as to the product's characteristics.

"PRODUCING CAUSE" means an efficient, exciting or contributing cause that, in a natural sequence, produced the injury or illness of Plaintiff.  There may be more than one producing cause.

Answer "Yes" or "No".

Answer: No

Question No. 2

Did the negligence, if any, of American Heyer-Schulte Corporation proximately cause injury or illness to Monieree Grimes?

"NEGLIGENCE" means failure to use ordinary care, that is failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person or ordinary prudence would not have done under the same or similar circumstances.

© 1995 North Texas Reports

"ORDINARY CARE" means that degree of care that a person of ordinary prudence would use under the same or similar circumstances.

"PROXIMATE CAUSE" means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred.  In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

Answer "Yes" or "No".

Answer: Yes

If, in answer to Question No. 2, you have found "Yes," then answer the following question.  Otherwise, do not answer the following question.

Question No. 3

Was such negligence of American Heyer-Schulte Corporation gross negligence?

"GROSS NEGLIGENCE" means more than momentary thoughtlessness, inadvertence or error of judgment.  It means such an entire want of care as to establish that the act or omission in question was the result of actual conscious indifference to the rights, welfare, or safety of the persons affected by it.

You are further instructed that in order for American Heyer-Schulte Corporation to be grossly negligent, you must find that (1) the actors whose conduct was grossly negligent were employed by American Heyer-Schulte Corporation in a managerial capacity and were acting in the scope of that managerial capacity, (2) American Heyer-Schulte Corporation authorized the doing and the manner of the act, OR (3) American Heyer-Schulte Corporation or a manger of American Heyer-Schulte Corporation ratified or approved the act.

Answer "Yes" or "No".

Answer: No

Question No. 4

Did American Heyer-Schulte Corporation engage in any false, misleading or deceptive act or practice that was a producing cause of damages to Monieree Grimes?

"PRODUCING CAUSE" means an efficient, exciting or contributing cause that, in a natural sequence, produced the injury or illness of Plaintiff.  There may be more than one producing cause.

"FALSE, MISLEADING, OR DECEPTIVE ACT OR PRACTICE" means any of the following:

1. Representing that the American Heyer-Schulte Corporation silicone breast implants used by Monieree Grimes had or would have characteristics that they did not have;

2. Failing to disclose information about goods that was known at the time of the transaction with the intent to induce another into a transaction; OR

3. Representing that goods or services are or will be of a particular standard, quality or grade when they are of another.

Answer "Yes" or "No".

© 1995 North Texas Reports

Answer: No

Question No. 5

Was the failure, if any, of Heyer-Schulte Corporation to comply with a warranty a producing cause of damages to Monieree Grimes?

"Producing cause" means an efficient, exciting or contributing cause that, in a natural sequence, produced the damages, if any.  There may be more than one producing cause.

"Failure to comply with a warranty" means any of the following:

a. Furnishing implants that, because of the lack of something necessary for adequacy, were not fit for the ordinary purposes for which such implants were used; or

b. Furnishing or selecting implants that were not suitable for a particular purpose if American Heyer-Schulte Corporation had reason to know the purpose and also had reason to know that Plaintiff was relying on American Heyer-Schulte Corporation's skill or judgment to furnish or select suitable implants; or

c. Failing to comply with an express warranty.  An EXPRESS WARRANTY is any affirmation of fact or promise made by American Heyer-Schulte Corporation that relates to the breast implants and becomes part of the basis of the bargain.  It is note necessary that formal words such as "warrant" or "guarantee" be used or that there be a specific intent to make a warranty.

Answer "Yes" or "No".

Answer: No

If you answered "Yes" to Question No. 4 or 5 then answer the following question.  Otherwise, do not answer the following question.

Question No. 6

Did American Heyer-Schulte Corporation engage in any such conduct knowingly?

"KNOWINGLY" means actual awareness of the falsity, deception, or unfairness of the conduct in question or actual awareness of the conduct constituting a failure to comply with a warranty.  Actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness.

In answering this question, consider only the conduct that you have found was a producing cause of damages to Monieree Grimes.

Answer "Yes" or "No".

Answer: Not answered

Question No. 7

What sum of money, if paid now in cash, would fairly and reasonably compensate Monieree Grimes for her injury or illness, if any, that resulted from the occurrence in question?

Consider the elements of damages listed below and none other.  Consider each element separately.  Do not include damages for one element in any other element.  Do not include interest on any amount of damages you find.

© 1995 North Texas Reports

Element a. Physical pain and mental anguish

Element b. Disfigurement

Element c. Physical impairment

Element d. Medical care

Answer in dollars and cents for damages, if any, that were sustained in the past and that in reasonable probability will be sustained in the future.

Answer: $400,000

If you have answered "Yes" to Question No. 4 or 5, then answer the following question.

Question No. 8

What is a reasonable fee for the necessary services of Monieree Grimes' attorneys in this case, stated as a percentage of Monieree Grimes' recovery?

Answer by stating a percentage

Answer: Not answered

If you answered "yes" to Question 3 or 6, and only in that event, then answer the following question.

Question No. 9

What sum of money, if any, should be assessed against American Heyer-Schulte Corporation as additional or exemplary damages?

"EXEMPLARY DAMAGES" means an amount that you may in your discretion award as an example to others and as a penalty or by way of punishment, or as compensation for the inconveniences and expenses at litigation, except attorneys fees and court costs, in addition to any amount that you may have found as actual damages.

Factors to consider in awarding exemplary damages, if any, are:

a. The nature of the wrong;

b. The character of the conduct involved;

c. The degree of culpability of the wrongdoer;

d. The situation and sensibilities of the parties concerned;

e. The extent to which such conduct offends a public sense of justice and propriety.

Answer in dollars and cents, if any.

Answer: Not answered